# CHARLESTON.

H. M. DUDDING *et al.* v. L. R. WHITE *et al.*

Submitted September 10, 1918.    Decided September 17, 1918.

1. HIGHWAYS—*Maintenance—Rights of Abutting Owners.*

   The proprietor of land through or along the boundary of which a way for public travel is established has a special right different from that of the public in the continued maintenance of the highway, if its abandonment will injuriously affect the access to and marketability of his land.   (p 544).

2. SAME—*Vacation—Method.*

   A county road established and opened pursuant to law continues as such until vacated or discontinued in the manner prescribed by law.   (p. 545).

3. SAME—*Discontinuance—Burden of Proof.*

   Upon a party asserting the discontinuance of part of a county road by alteration thereof from its former location to a new location rests the burden of showing affirmatively not only the actual alteration and abandonment but by what authority that result was produced.   (p. 546).

4. SAME—*Abandonment—Procedure.*

   A change in the location of part of a county road under the provisions of §§ 30 and 35, ch. 43, Code 1906, giving to the county court authority upon petition, or "without petition in any case in which the interest of the people of the county requires it", to alter any public road, thus abandoning it on the former location under the provision of § 32, ch. 43, Code 1906, requires some affirmative act or order of the court authorizing or directing the change.   (p. 546).

5. SAME—*Change of Location—Consent of Abutting Owner.*

   A change in the location of part of a county road under the provisions of §21, ch. 43, Code 1906, giving to the county surveyor authority to "change any county road in his precinct with the consent of the owner of the land in which such change is made," requires as a condition precedent thereto the consent of the owner of the land over which the road formerly ran.   (p. 547).

6. SAME—*Obstruction—Injunction.*

   It is no defense to a suit to enjoin an obstruction of a public road that the owner may have means of ingress to and egress from his land by another route.   (p. 547).

Appeal from Circuit Court, Cabell County.

Bill by H. M. Dudding and others against L. R. White and others. Decree for defendants, and plaintiffs appeal.

*Reversed, and injunction made perpetual.*

*Campbell, Brown & Davis,* for appellants.

*Geo. J. McComas,* for appellees.

Lynch, Judge:

The bill was filed to procure an injunction in part commanding the defendant to remove obstructions placed by him or by his direction in a road, alleged to be a highway, located and maintained by the county court for public travel in part of the land severally owned by each of them along a small stream known as Springdale Branch, which separates each tract from the other and forms the boundary line between them. Both tracts were owned by James McCallister, and by his will, probated in 1856, and by mesne conveyance, title to each parcel finally vested in the parties to the suit, and whereby Springdale Branch was declared to be the line of demarcation between the respective tracts, the tract of the plaintiff being on the east and the tract of the defendant on the west side thereof.

The road so located and maintained originally crossed Indian Creek, of which Springdale Branch is a tributary, on a bridge near and below the confluence of the two streams and onto the land of the plaintiffs, and thence onto the lands of the defendant 150 to 200 feet up Springdale Branch from the bridge, the distance being approximated by witnesses. The situation of the respective parcels of land in respect to each other and Springdale Branch and the county road, as originally located, is not controverted by the proof, though denied in part by the answer, to which there was a general replication. The proof shows and defendant admits the obstruction of the road as charged in the bill, but seeks to justify his action in that regard by claiming to be the owner of all the land east of Springdale Branch not within the fence inclosing the land of the plaintiffs. This alleged ownership rests upon these grounds: First, a survey made by Hawkins at the instance and request of the former pro-

prietors of the land now owned by the plaintiffs to ascertain the acreage thereof preparatory to its division among them as co-heirs at law. Hawkins, to obviate the difficulty of following the meanders of Springdale Branch, its course being devious and circuitous, ran a straight line along it through the entire tract, whereby there was excluded from the inclosure all the land between that line and Springdale Branch. Second, the relocation of the road by the direction or act of the surveyor of the road precinct in which the Charley's Creek road is situated so as to place it entirely on the land of the defendant. Third, adverse possession of the land west of the Hawkins line.

These grounds do not warrant the conclusion reached nor sustain the claim based on them. Defendant had no interest in the dispute referred to Hawkins, had no part in his selection, was not a party to the agreement and had no right to be affected by it. It was a matter peculiar and personal to the owners of other land. Indeed, it does not appear whether defendant knew when Hawkins was employed or the purpose of the employment or what he was employed to do or what he had done until after the service was performed. Besides, the mere abandonment of one road by the establishment of another in its stead could not under any circumstances vest title to the old route in any person other than the owner of the land on which it was located. By operation of law the title would pass and vest either in the present or in the former proprietor of the land, and, if in the latter, that title passed to the plaintiff by the deed subsequently made to him by them, a copy of which is filed as an exhibit in the cause.

Nor does the proof suffice to show the elements essential to establish adverse possession of the uninclosed land lying immediately west of the Hawkins line. Defendant admits he did not cause the small area to be charged on the land books of the county in his name for taxation separate from or additional to the area of the tract he owned west of Springdale Branch.

Stated in the broad language of counsel, another argument is "that the road claimed to have been obstructed never reached plaintiff's land nor afforded an outlet to the same

and was never used by plaintiff's predecessors in title on the east side of Springdale Branch as a mode of egress or ingress to said farm.'' The first proposition is not consonant with the facts established and is not corroborated by any fact proved except in one particular. While it is true no access from the land east of Springdale Branch to the county road in its new location is obtainable without trespassing upon land owned by the defendant west of that stream, if his claim to the land along the old roadway west of the Hawkins line is valid, yet, as said, the basis of the claim is unwarranted, and White admits that but for the claim plaintiffs can obtain access to the public road without trespassing on land owned by him.

Whether the present or any earlier proprietor of the land lying east of Springdale Branch used the old route as a public thorofare is not controlling. It was on their land. If necessary, they could use it as an outlet for legitimate purposes. It was available for them whenever their convenience or the profitable enjoyment of the land required such use. If necessary for the full exercise and enjoyment of the rights and privileges of ownership, the rights and privileges cannot be curtailed or destroyed except in the manner provided by law, whether they have or have not theretofore been exercised by such owners. Whenever such exercise becomes necessary by reason of changed conditions or circumstances, whatever they may be, the owners may assert any reasonably available and valuable pre-existent right of which they may have unlawfully been deprived.

The proprietor of land through or along the boundary of which a way for public travel is established has a special right different from that of the public in the continued maintenance of the highway, if its abandonment will injuriously affect the marketability of his land. If this special right has value, and it does when it works injury to a dominant estate, it is a property right which cannot lawfully be impaired without compensation. That its value to the owner may be small is not the true test, though it may furnish the standard for the measurement of the compensation. It cannot change the nature of the right itself. Sec. 1180, Elliott,

Roads & Streets; *State* v. *Seattle* (Wash.), 27 L. R. A. (N. S.) 1188, 1192; *Bigelow* v. *Ballerino,* 111 Cal. 559; *Bannon* v. *Rohmeiser,* 90 Ky. 48; *Heinrich* v. *City of St. Louis,* 125 Mo. 424; *Haynes* v. *Thomas,* 7 Ind. 38; *Lackland* v. *North Missouri R. Co.,* 31 Mo. 180; *Lexington & Ohio R. Co.* v. *Applegate,* 8 Dana 289; *Egerer* v. *N. Y. Cent. & H. R. Co.,* 29 N. E. 95, 97. See also *Fowler* v. *Railway Co.,* 68 W. Va. 274, 280. Nothing said in this paragraph as to compensation is to be interpreted or understood as an authoritative declaration of an opinion upon the necessity for compensation in the alteration of a public road. That right is not involved. What is said on that subject is intended only as an argument to emphasize the requirement for the assent of the landowner whose rights may be prejudiced by the proposed alteration.

Under the provisions of chapter 43 of the Code in force at the time of the alleged change in the location of the Charley's Creek road in 1902, there were two methods by which a county road could be changed; one, by the county court, the other, by the county surveyor. Secs. 30 and 35, ch. 43, Code 1906, gave to the county court upon petition, or "without petition in any case in which the interest of the people of the county requires it", authority to alter any public road "whenever it becomes necessary to do so in order to place such turnpike or other road on better ground or grade than the existing location." Notice of such proposed change, later required by sec. 56a(15), ch. 43, Code 1913, (Acts 1909), was not then so required. *County Court* v. *Thornburg,* 65 W. Va. 185. Further, sec. 32, ch. 43, Code 1906, provided that "when any road is altered, the former road shall be discontinued to the extent of such alteration and no further, and the new one established."

However, under this method some affirmative act of the county court authorizing or directing the change or alteration is essential. On the contrary, all that the county court did, so far as it appears to have done anything, was to buy a narrow strip of land from the defendant on which the surveyor in charge located the new road. In fact, by an order later entered of record and directed to defendant, notice or

knowledge of which he does not deny, the county court stated that the road had been changed and moved to his land "without any authority from the county court", and directed him "to remove any fence of any kind that you have on the old county road, as the same has never been abandoned by the court."

As to the second method, sec. 21, ch. 43, Code 1906, confers authority upon the surveyor to "change any county road in his precinct with the consent of the owner of the land in which such change is made, provided such change does not increase the length, grade," etc. If the statute does not by prescription limit and restrict the exercise of this authority to the tract on which the land was located before the change, there is a plain implication to that effect in the language used. The phrase "with the consent of the owner of the land in which such change is made" is significant and implies the necessity and sufficiency to warrant the alteration. But if the authority conferred warrants an alteration that would remove a road from the tract of its location to the land of another owner so as effectually to render it totally unavailable for the convenient use and enjoyment of the first owner, his consent certainly is supremely necessary, whether from the express terms of the statute or not. The legislature assuredly did not intend to confer the power to work such inequitable results without the consent of the person so to be affected or some notice to him, whether required by statute or not, of an intention to deprive him of access to the proposed new location. That plaintiffs or their predecessors in title assented to or had such notice of the contemplated alteration is not shown. In the absence of either, the alteration legally was unauthorized. The assent of White, predicated upon his claim of title to land east of Springdale Branch not covered by his muniments of title to the land west of that branch, does not avail as against the real owners.

Once a road always a road is a trite saying often repeated in the law books and decisions, and whoever asserts a discontinuance of a highway once lawfully established for use over a definite location, and claims a valuable right by reason thereof, assumes the burden of showing not only the actual

alteration and abandonment, but by what authority that result was produced. *Lazzell* v. *Garlow,* 44 W. Va. 466, 482; *County Court* v. *Hopkins,* 80 W. Va. 393. It does not suffice to say some person designated as the surveyor of roads of the road precinct did it. It must be made to appear affirmatively that he was empowered to act and that what he did was done lawfully. His act was not of that character if he failed to obtain the proper consent of the owners whose rights were impaired by the discontinuance.

That plaintiffs have some outlet by another route to a different public road will not alone sanction the deprivation of the right of access to a highway long established and maintained on lands now owned by them. The other route suggested by the proponents of this defense is by way of a lane along the western boundary line of the Dudding tract. Its feasibility or convenience is not disclosed with any considerable degree of certainty. There is such a lane perhaps on plaintiffs' land, but it is reasonably certain that the lane does not extend to any public thorofare but stops short of it, the intervening land not being owned or controlled by them. Their use of it is perhaps merely permissive and subject to interruption or denial at the will of the owner. It is immaterial, however, and no defense to the suit to say that the owner may have access to his land by another route. *Heinrich* v. *City of St. Louis,* 125 Mo. 424, 426. See also *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476.

It appearing that the decree dissolving the injunction and dismissing the bill does not accord with the facts proved, and is in violation of correct legal principles, our order will reverse the decree, reinstate and perpetuate the injunction, and award costs and damages to the plaintiffs.

*Reversed, and injunction made perpetual.*