FATELLIS *v.* TANNER *et al.; et vice versa.*

Nos. 15131, 15142.   APRIL 5, 1945.   REHEARING DENIED MAY 2, 1945.

308

310

*Heath & Heath,* for plaintiff.

*Mingledorff & Roberts,* for defendants.

GRICE, Justice. ■ The plaintiff's exception will be first considered. It relates to the ownership of the 150 acres, which was all the land sued for except the 50 acres embraced in the tax deeds. Since it is admitted in the pleadings that both parties claim under a common grantor, to wit, Moses J. Kirkland Sr., the ownership must be determined upon the comparative strength of the two claims of title emanating from him. Code, § 33-101; *Wallace* v. *Jones,* 93 *Ga.* 419 (21 S. E. 89). The plaintiff holds conveyances from the ultimate remaindermen in the deed from Kirkland Sr. to M. J. Kirkland Jr. and Margery W. Kirkland during their natu-

ral lives, then to their heirs and assigns, which deed was dated May 11, 1903, and recorded September 30, 1908. Standing alone, this showed title in the plaintiff. However, the defendant, A. J. Tanner, relies on a deed from Kirkland Sr. to Moses J. Kirkland Jr., reciting a consideration of $200, dated April 23, 1881, and recorded February 9, 1881; and on subsequent conveyances from Moses J. Kirkland Jr. to Margery Kirkland, from Margery Kirkland to G. S. Tanner, from G. S. Tanner to A. J. Tanner and Mrs. Eliza Smith, and from Mrs. Smith to A. J. Tanner. While the first deed out of Kirkland Sr., which is the first link in the plaintiff's chain, bears a date prior to his deed to Kirkland Jr., the former was not placed on record until several years subsequent to the date and record of the deed from Kirkland Sr. to Kirkland Jr., which last-referred-to deed is the first link in the defendant Tanner's chain of title. That deed, as against the other deed, which, though its execution bore a later date, was first recorded, took priority, if taken without notice of the existence of the first. Code, § 29-401. Kirkland Jr. could not be said to have taken the second deed without notice, because he was a party in both deeds; nor for the same reason could his subsequent grantee, Margery W. Kirkland, be so treated. Unless, however, her grantee, Tanner, took with notice, the latter would not be charged with notice which the law imputes to her and her grantor, but on the contrary he would be protected. *Truluck* v. *Peeples*, 3 *Ga.* 446; *Collins* v. *Heath*, 34 *Ga.* 443. The ruling to that effect in the two cases last cited is now embodied in the Code, § 37-114. On the former appearance of this case (197 *Ga.* 471, supra), it was held that a recital in a deed, by way of further description of the premises, making reference to another deed from one who, according to the registry of deeds, had at that time no title that he could convey (there being on record a deed to the same property from him to the grantor in the first-mentioned deed, the first-mentioned deed not referring to such other deed as the source of the grantor's title), is not sufficient to justify a holding that said reference carried notice that the grantees in the last-named deed were clothed with title. Looking alone to the writings which furnish the basis of the claims of ownership, it must be held that the defendant had the superior title and was therefore entitled to prevail, there being nothing in the record to rebut the presumption that Tanner was an innocent purchaser. *Johnston* v.

*Neal,* 67 *Ga.* 528 (3), 534. Counsel for the plaintiff contends that the testimony of Tanner himself shows that he did not purchase in good faith. This contention has not been overlooked, but in our opinion it can not be maintained.

■ The plaintiff insists that she proved a prescriptive title. The burden was on her to affirmatively establish such contention. *Bussey* v. *Jackson,* 104 *Ga.* 151 (30 S. E. 646). The substance of her own testimony on this subject, set forth in the preceding statement, is insufficient for that purpose. The same statement shows what Mrs. G. W. Heirs swore with respect to that contention. Her testimony likewise fails to give sufficient facts to authorize a finding in support of a prescriptive title. The witness A. J. Meeks testified that he knew the place during the time Mose Kirkland Jr. and his wife lived there, but did not testify that they lived there for as many as seven years at any one time; but would move, and return for two or three years. This witness further testified that: "After they moved back to Nicholls, he kept it rented out. Mose Kirkland Jr. was in charge of it. He was in charge of it when he lived in Nicholls—he kept men put there, and would go back to look after it." How long Kirkland Jr. kept it rented out, the witness does not state. The testimony of Alfred Meeks also appears in the accompanying report of the facts. He was unable to say "plime blank approximately how long" Kirkland Jr. and his wife lived on the place. They were there after the witness was grown and married, which "was in '95," but for how long he does not tell us. The Kirklands, "after they moved off the place, had tenants on it—right on for several years," but here again he did not inform the court for how long. These were the only witnesses who gave testimony in support of the claim of a prescriptive title. Their evidence was not sufficient to establish it. There was not shown any continuous, uninterrupted possession for any one period of seven years, even if it be conceded that all the other elements of a prescriptive title were shown. Compare the Code, §§ 85-401, 85-402, 85-406, 85-407; *Greer* v. *Raney,* 120 *Ga.* 290 (47 S. E. 939); *Clark* v. *White,* 120 *Ga.* 957 (48 S. E. 357). As an additional reason for the ruling on this branch of the case, it is well to recall the testimony of Mrs. Heirs, a daughter of M. J. Kirkland Jr. and Margery Kirkland, to the effect that her parents were first in possession of this property in 1889, and her evidence

is undisputed. It contradicts the statement in the plaintiff's amendment that immediately upon the execution of the deed from Kirkland Sr., dated in 1903, Kirkland Jr. and his wife entered actual possession. The deed from Kirkland Sr. to Kirkland Jr. was executed in 1881, and the deed from the latter to his wife in 1889. The one from Kirkland Sr. to his son and daughter-in-law for life, with remainder, was dated May 11, 1903. Prescription is based on possession and a claim of right. The possession of land, if held under a claim of right, is in law referred to the title, actual or supposed, under which the right of possession is claimed. Powell on Actions for Land, § 294. This would seem to be the deed from Kirkland Sr. to Kirkland Jr., dated April 23, 1881, since the deed from the same grantor, which contained a remainder interest, was not dated until September 30, 1908. In this view of the matter, where is any prescription under which the grantee of the remaindermen can claim? There was no error in directing a verdict for the defendant for the 150 acres.

■ In the plaintiff's motion for new trial, complaint is made that, since the court directed a verdict in her favor for the other 50 acres, and since the record shows that she was entitled to recover at least the 50 acres, the court erred in not submitting to the jury the question of how much mesne profits she was entitled to, instead of in effect, by the ruling made, denying her the right thereto. The plaintiff in her petition set forth that she derived her title by quitclaim deeds from the heirs at law of Moses W. Kirkland Jr. and Margery W. Kirkland. None of these quitclaims bore a date earlier than February 7, 1942, a few days before the filing of the suit. In the pleadings she prays for the recovery of mesne profits "for each of the years 1938 to 1941 up to December 31st inclusive." There was no demurrer, and hence, when the case came on for trial, there was no estoppel of which advantage might be taken. In that situation, it does not necessarily follow that she has alleged sufficient facts which, if proved, would entitle her to recover mesne profits for the years antedating the conveyances to her. See statements to that effect and the discussion therein in *Kelly* v. *Strouse,* 116 *Ga.* 872 (8) (43 S. E. 280), and *Ross* v. *Durrence,* 173 *Ga.* 457 (160 S. E. 370).

The question as to the right of the plaintiff to recover mesne profits for the years before she acquired her title is in principle

ruled adversely to her in *Allen* v. *Macon, Dublin & Savannah R. Co.,* 107 *Ga.* 838 (33 S. E. 696). That was an action for damages brought against the company for having trespassed upon the land of the plaintiff, the title to which he had acquired subsequently to the trespass. It was there ruled that a vendee of land upon which a trespass had been committed while it was the property of his vendor has no right of action against the trespasser for damages thus occasioned, which were recoverable by the vendor; aliter, as to new and additional damages growing out of a continuation of the original trespass after the vendee acquired title. In the opinion, it was said: "The reason for this rule is obvious. As is pointed out by the authorities above cited, a trespass upon land simply gives to the owner a right of action for damages, which can not be said to 'run with the land,' and therefore does not pass to a subsequent purchaser." When the plaintiff acquired her deeds in 1942, there was no express assignment to her of her vendor's right to proceed against the defendant for the mesne profits that had already accrued, nor did the law write into her purchase any such right.

Mesne profits are recoverable as damages. The claim therefor sounds in tort, which is "the unlawful violation of a private legal right, other than a mere breach of contract." Code, § 105-101. An action for a tort shall in general be brought in the name of the person whose legal right has been affected, and who was legally interested in the property at the time the injury thereto was committed. § 3-109. Compare *Wood* v. *McGuire,* 21 *Ga.* 576, and the statement of Lumpkin, J., at the end of division 4 of the opinion. Although the question here dealt with does not seem to have heretofore been squarely presented in any decision of this court, the ruling here made to the effect that the plaintiff is not entitled to recover mesne profits for any space of time prior to her acquiring title is supported by the following authorities: Hotchkiss *v.* Auburn & Rochester R. Co. (N. Y.), 36 Barb. 600; Lang *v.* Williams, 166 Mo. 1 (65 S. W. 1012); Payne *v.* Treadwell, 16 Cal. 220.

■ If it be assumed that although the plaintiff prayed for the recovery of mesne profits only up until and including December 31, 1941, she was yet entitled upon proper proof to recover these from the date of the several quitclaim deeds made to her up to the date of the trial, it remains to be considered whether there was

sufficient evidence to authorize the submission thereof to the jury. Mesne profits are not recoverable without some evidence as to amount. *Eaton* v. *Freeman,* 58 *Ga.* 129. While there was some evidence as to value of the 200 acres as a whole, and what a turpentine lease on the whole would be worth for the years 1942, 1943, and 1944—$50 per thousand boxes each year—and evidence as to how many boxes had been worked for each of several years on the whole, there is no way to separate the value of the mesne profits on the 150 acres from those on the 50 acres. All the testimony that affected the value related to the turpentine privileges. There is nothing to indicate that the trees were of uniform size or age on the two tracts. No one gave an opinion as to the value of the mesne profits on the 50-acre tract, and no facts were furnished the jury as to this tract to enable them to form an opinion. The testimony further was that a turpentine operator's profit comes from the first four years of his lease. There is in the record a turpentine lease to the 50 acres, from G. S. Tanner to Andrew J. Tanner and Harry Smith, dated February 5, 1937, and running five years, which recited a consideration of $150. This lease expired before the plaintiff acquired her claim of title, and standing alone, as it does, is insufficient to form the basis as to any value for mesne profits of the 50 acres after February 7, 1942, which was the date of the plaintiff's first deed. The plaintiff has no just ground to complain that the trial judge failed to submit to the jury the question of mesne profits, since she failed to produce evidence as to the amount and value thereof.

Counsel for the defendants in the trial court, the plaintiffs in error in the cross-bill, make this statement in their brief: "The defendants have filed no main bill of exceptions and consequently do not expect a ruling on the exceptions made in the cross-bill, unless there should be a reversal on the main bill of exceptions." In the oral argument of this case, the same counsel asked that his cross-bill be dismissed, if the main bill be affirmed. The request is granted. Compare *Holsey* v. *Porter,* 105 *Ga.* 837 (37 S. E. 784) ; *Mackin* v. *Blalock,* 133 *Ga.* 550 (4) (66 S. E. 265, 134 Am. St. R. 220) ; *Schroeder* v. *Schroeder,* 144 *Ga.* 119 (86 S. E. 224).

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*